JOHN WILSON, Administrator *vs.* LEWIS SHEARER

A distress for the non-payment of a tax cannot be made after the death of the person on whom the tax is assessed.

An oral agreement was made between W. and one of his sons, that the son should take a certain part of W.'s land to the halves : After W.'s death, the son cut the grass on said land, made it into hay, and deposited it in a barn on W.'s farm : W.'s administra tor inventoried the hay, and afterwards divided it between himself and the son, in the presence of part of the other heirs of W.: S., a stranger, converted to his own use that part of the hay which was taken by the administrator.  *Held,* that said hay, as against S., was the property of the administrator, and that he might maintain an action of trover against S. for the conversion.

THIS was an action of trover, commenced before a justice of the peace, by the administrator of the estate of James White.   The declaration alleged that the plaintiff, in his said capacity of administrator, on the 21st of February 1844, was possessed of two tons of hay, and that, on the same day, the defendant, knowing said hay to be the property of the plaintiff, converted it to his own use.   The justice rendered judgment

for the plaintiff, and the defendant appealed to the court of common pleas. At the trial, in that court, the defendant justified the seizure and sale of the hay, as collector of taxes of the town of Colerain, for the non-payment of a tax assessed upon said James White, for the year 1841. It was admitted that said White's tax for that year was $11·71, and that he paid $4 thereof to the former collector. The only fact in dispute was, whether he paid the whole tax to that collector. The jury found that he did. The other facts in the case were then agreed on, as follows:

The hay in question grew on the farm of said White, who died on the 1st of June 1843. The plaintiff was appointed administrator of said White's estate on the 22d of August 1843. Said hay was cut and made in July and August 1843, by a son of said White, who had a family and farm of his own, by a verbal contract between him and said White, made in the winter or spring preceding. This son took 40 acres of his father's farm, and no more, to the halves; and another person took another part of the mowing, on the same terms Said hay was deposited in the barn of the deceased, and was inventoried and appraised as a part of his property; the plaintiff and three of said White's eleven heirs being present at the time of the appraisement. The hay was afterwards divided between said son and the plaintiff, according to the aforesaid verbal contract; and that part of it which was not set off to the son was seized and sold by the defendant.

On the 16th of May 1842, James M. Shearer, collector of taxes for the municipal year 1841, was removed from office, and the defendant appointed in his place by the assessors, who committed to him the tax list, which had been committed to the former collector, with a warrant directing the defendant to collect all the unpaid taxes on said list. The reasons assigned by the assessors for the removal of said James M. Shearer were his remissness and negligence, and his inability or unwillingness to account for taxes collected by him, to the amount of $925. (See Rev. Sts. *c.* 8, § 40.) In said tax list, thus committed to the defendant, the sum of

$4 was credited as having been paid by said James White; but it was apparent that the book had been altered. The defendant called on said White for payment of the balance, and was then told by him that he had paid the tax in full. In default of payment of the balance, the defendant, on the 21st of February 1844, took and sold the hay in question, on his said warrant.

On these facts, (and others which were ultimately deemed immaterial,) the case was submitted to the decision of the court of common pleas; and from the judgment of that court an appeal was taken.

*H. G. Newcomb,* for the plaintiff.

*Grennell & Aiken,* for the defendant.

SHAW, C. J. 1. The first and leading question in this case is, whether a distress for the non-payment of a tax, upon an assessors' warrant, can be made by a collector, after the decease of the tax payer. In the analogous case of an execution, it has been held that the property left by the deceased debtor cannot be levied upon after his decease. *Jewett* v. *Smith,* 12 Mass. 309. The reason seems to be equally strong in case of a tax warrant, which is in the nature of an execution. The debtor has ceased to have any property in the goods, and the property vests in his administrator, by relation, from the time of the intestate's death. The provision of Rev. Sts. *c.* 8, § 7, which authorizes the distress and sale of the goods of a person who shall refuse or neglect to pay his tax, implies, we think, that there is a person, who is then delinquent, and who may prevent the sale by payment of the tax. It is a means of coercion as well as a mode of obtaining satisfaction.

But further; it is provided in the same chapter, § 15, that when any person, who is taxed, shall die, before payment of the tax, the collector may, in his own name, maintain an action, as for his own debt. This affords an ample remedy, in every case, unless the property is necessary to satisfy a class of more highly preferred claims, when it ought not to be taken. And this leads to another consideration which seems to us quite decisive. When a person dies, his property

must go into the hands of an administrator, in order that it may be ascertained and identified, and applied to the satisfaction of claims in a certain order. After paying funeral expenses, and those of the last sickness, and of administration, it is to pay, *first*, debts due to the United States ; *second*, public rates and taxes ; *third*, debts due to all other persons ; and if there be not enough property to pay all the debts of any one class, then ratably in proportion. Rev. Sts. *c.* 68, § 1. If property could be taken out of the hands of the administrator, to pay taxes, it might leave two anterior classes of claims unpaid, contrary to the declared purpose of the statute.

Being of opinion that such a distress could not be lawfully made by a collector, we have thought it unnecessary to consider whether the defendant was duly appointed, and whether his predecessor was lawfully removed, and other questions discussed on the argument.

2. But another objection is raised to the plaintiff's right to recover, namely, that to maintain trover, a plaintiff must prove property in himself; that as this hay was grass and part of the freehold, at the time of the decease of White, the plaintiff's intestate, and as the person, who took it to cut at the halves, had a license only, or at least was a tenant at will only, his license was revoked, and his interest as tenant at will ceased, at the death of the intestate, and the hay was the property of the heirs, as part of the realty, and was not personal property which vested in the administrator.

It is true that the plaintiff must prove property in himself. But this objection comes with an ill grace from the defendant, who, failing to justify himself under his warrant, was a mere stranger ; since he returned that he had taken the property as a distress, (of course as personal property,) and the personal property of White, the intestate, which, by operation of law, must have vested in the administrator. But without relying on any such estoppel, we think the plaintiff had sufficient title to maintain this action against one who has no title, and does not claim under the heirs. In the case supposed, the heirs became entitled to the estate at the decease of the ancestor,

on the 1st of June; and if the tenant was not entitled to emblements, then the right to the growing grass was in the heirs, as tenants in common, and they had a right to affirm the contract with the tenant to make the hay at the halves; and the presumption is, from all that appears, that they did so. As far as they acted at all, they assented to the subsequent division, and the delivery of one half to the administrator, to be by him inventoried. When the rents and profits of real estate have been received by the administrator with the consent of the heirs, they have been regarded, to some purposes, as assets. *Stearns v. Stearns,* 1 Pick. 157. At all events, it gives the administrator a lawful possession, and a good title against all persons except the heirs. Besides; the son, who, by agreement with his father in his life time, took the mowing at the halves, was himself one of the heirs, and, as such, tenant in common of the hay. On the division, he took one half, and consented that the plaintiff should hold the other half; which, under the circumstances, was a delivery, and that with the consent of some of the other heirs. This, we think, gave the plaintiff a lawful possession, and a valid title against all but the heirs. Suppose, as it was suggested in the argument, that all parties acted under a mistake, and believed that this hay was the property of the intestate, and, under this mistake, consented that the administrator should take possession of it, and inventory it; the result would be the same, as against the defendant. Such a possession would be sufficient evidence of title to enable the plaintiff to maintain this action. The defendant could avail himself of no such mistake, to take the property without some justifiable cause.

*Judgment for the plaintiff.*